**ACCOUNTING OUTSOURCING, LLC, et al., Plaintiff,**

**United States of America, Intervenor**

**State of Louisiana, Intervenor**

v.

**VERIZON WIRELESS PERSONAL COMMUNICATIONS, L.P.**

No. CIV.A. 03–161–D–M3, CIV.A. 03–169–D–M3, CIV.A. 03–173–D–M3, CIV.A. 03–198–D–M3, CIV.A. 03—208–D–M3, CIV.A. 03–358–D–M3, CIV.A. 03–406–D–M3, CIV.A. 03–421–D–M3, CIV.A. 03–468–D–M3.

United States District Court, M.D. Louisiana.

Aug. 5, 2004.

See also, 294 F.Supp.2d 834.

John P. Wolff, III, Keogh, Cox & Wilson, LTD, Keith D. Jones, Philip Bohrer, Bohrer Law Firm, Christopher K. Jones, Keogh, Cox & Wilson, Baton Rouge, LA, for Plaintiff.

Dean D. Hunt, Baker & Hostetler, Houston, TX, Michael W. McKay, Michael D. Lutgring, McKay, Williamson, Lutgring & Cochran, Baton Rouge, LA, Mary McCrory Hamilton, Voorhies & Labbe', Lafayette, LA, Elizabeth Haecker Ryan, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, for Defendant.

Keith D. Jones, Philip Bohrer, Bohrer Law Firm, Gary P. Koederitz, Stephen Todd Hoover, Hoover Law Firm, Baton Rouge, LA, for Consolidated Plaintiffs.

Brett P. Furr, Elisabeth Quinn Zelden, Brandon Kelly Black, Taylor, Porter, Brooks & Phillips, Stephen Paul Strohschein, Dan E. West, McGlinchey Stafford PLLC, Scott Cameron Barney, Keith Christian Armstrong, Chaffe, McCall, Phillips, Toler & Sarpy, Kirk A. Patrick, III, Heather A. Cross, Holly Jeanne Quick, Donohue Patrick PLLC, Martin E. Golden, Kantrow, Spaht, Weaver & Blitzer, Charles S. McCowan, Jr., Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, George J. Krueger, Franklin C. Love, Blank Rome, LLP, Philadelphia, PA, Alex J. Peragine, Peragine & Lea, LLC, Covington, LA, Gerald A. Melchiode, Scott James Bradley, Galloway, Johnson, Tompkins, Burr & Smith, John Francis Olinde, Chaffe, McCall, Phillips, Toler & Sarpy, Robin B. Cheatham,

Michael Needham Mire, Adams & Reese, LLP, Peter Newton Freiberg, Jones, Verras & Freiberg, LLC, Richard E. Sarver, Barrasso Usdin Kupperman, Freeman & Sarver LLC, New Orleans, LA, Joseph C. Chautin, III, Mark Allen Balkin, Hardy, Carey & Chautin, LLP, Metairie, LA, James H. Ferrick, III, Bryan Cave LLP, St. Louis, MO, for Consolidated Defendants.

Computers Across America, Inc., Canoga Park, CA, pro se.

John Joseph, Gaupp, United States Attorney's Office, Baton Rouge, LA, for Intervenor–Plaintiff.

## RULING ON MOTION TO DISMISS

BRADY, District Judge.

This action is before the court on consolidated Defendants' Motion to Dismiss (doc. 150). Consolidated Plaintiffs have filed an opposition memorandum. Additionally, because the constitutionality of a federal and a state statute are at issue, the United States and the State of Louisiana have intervened and filed their own opposition memoranda. This court's subject matter jurisdiction is based upon 28 U.S.C. § 1332.

The named Plaintiffs are suing on behalf of themselves and proposed classes of Louisiana residents who allege they received unsolicited fax advertisements from Verizon Wireless Personal Communications, L.P.; Kappa Publishing Group, Inc.; Kable Fulfillment Services of Ohio, Inc.; Satellink Paging of Georgia L.L.C.; Satellink Communications, Inc.; Computers Across America, Inc.; Rawlings Insurance Services, Inc.; Holiday Management Group, Inc.; Textron Financial Corporation; Perry Johnson, Inc.; Protus IP Solutions, Inc.; Clear Channel Communications, Inc. d/b/a Lite Rock 96.1 The River; Bridge 21, Inc.; Monroe Systems For Business, Inc.; and Everycontractor.com (collectively, "Defendants") in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Louisiana's Unsolicited Telefacsimile Messages Act ("UTMA"), La. R.S. 51:1745 et seq. Plaintiffs seek statutory penalties in the amount of $500 per fax, injunctive relief, and treble damages for willful violations of the TCPA. Plaintiffs additionally seek statutory penalties between $200 and $500 per fax, costs, and attorneys' fees for violations of the UTMA.

On January 5, 2004, the Magistrate Judge granted the parties' Joint Motion for a Case Management Order, keeping these putative class actions consolidated through this court's decision on the dispositive motions and any appeal therefrom.[1] The Case Management Order provided that this court address the common legal issues involved in each action.[2] These issues include whether Plaintiffs have a private right of action under the TCPA; whether it is proper to bring a TCPA or an UTMA claim as a class action; and, significantly, whether the TCPA or the UTMA violates the Due Process Clause, the First Amendment, or the Fourteenth Amendment of the United States Constitution. Defendants ask this court to dismiss all claims pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c).

For the following reasons, this court finds that Plaintiffs have a private right of action under the TCPA and that, in federal court, class actions are proper under both the TCPA and the UTMA. This court also

---

1. Doc. 92.

2. For this reason, this court does not address the merits of the supplemental memorandum filed by Kappa Publishing and Kable Fulfillment, which involve grounds for dismissal unique to those defendants (doc. 152).

holds that the civil damages provisions of the TCPA and the UTMA do not violate due process. Additionally, this court finds that the TCPA's regulation of commercial speech does not violate the First Amendment.[3] Furthermore, the TCPA and the UTMA do not unconstitutionally impose strict liability for their civil damages provisions.[4] Finally, this court refuses to consider the hypothetical FCC interpretation of the TCPA which is the subject of Defendants' equal protection challenge.

## Scope of Review for Motion to Dismiss and for Motion for Judgment on the Pleadings

Fed.R.Civ.P. 12(b)(6) provides that a motion to dismiss for failure to state a claim may be granted when the complaint fails to state a legally cognizable claim. As set forth by the United States Supreme Court, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[5] In deciding whether to grant a motion to dismiss for failure to state a claim, a district court must accept the facts of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.[6] The complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.[7]

Fed.R.Civ.P. 12(c) provides, in pertinent part, that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The motion is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.[8] The court may consider as part of the pleadings any documents referred to in the plaintiff's complaint that are central to the plaintiff's claims.[9] "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[10]

## Analysis

### I Whether a Private Right of Action Exists

██ Defendants argue that this action should be dismissed because the TCPA requires a state to pass an enabling statute before a plaintiff is able to bring a private action for damages in that state. Plaintiffs, however, maintain that, under the TCPA, a plaintiff may bring a private right of action in a state absent state legislation prohibiting it. The basis for the parties'

3. Congress is currently trying to amend 227(b)(1)(C) with the Junk Fax Prevention Act of 2004. The amendment would not significantly change this court's analysis, however, because it does not change the regulation of or definition of commercial speech and it does not significantly change the strict liability nature of the law.

4. This court finds that the constitutionality of the UTMA's criminal liability provision is not properly before the court at this time.

5. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

6. *Fernandez–Montes*, 987 F.2d at 284.

7. *Id.* at 284–85.

8. *See Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990).

9. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000).

10. *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420–21 (5th Cir.2001).

argument is the statutory section within the TCPA which authorizes a private right of action. The section states,

**Private Right of Action.** "A person or entity may, *if otherwise permitted by the laws or rules of court of a State,* bring in an appropriate court of that State(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions." [11]

To date, six federal Circuit Courts of Appeals have interpreted this statutory provision when considering whether state courts have exclusive jurisdiction over private causes of action under the TCPA.[12] While these courts interpreted the same statutory provision quoted above, the courts were primarily focused on Congress's meaning of the word "may," not

the meaning of the "if otherwise permitted" clause which is crucial to the issue here.[13] Nevertheless, the language from some of these Circuit Court cases, as well as the opinions from ten state appellate courts, indicate three emerging interpretations of the TCPA's "if otherwise permitted" language.[14] These interpretations have been described as the "opt-in," "opt-out," and "acknowledgment" approaches to the issue.[15] For the reasons which follow, this court adopts an "acknowledgment" approach.

### A. The "Opt–In" Approach

To date, only one state appellate court has specifically adopted the "opt-in" approach. In *Autoflex Leasing, Inc. v. Manufacturers Auto Leasing, Inc.,* the Texas Court of Appeals interpreted the "if otherwise permitted" clause to mean that TCPA damage claims cannot be asserted in a state court unless that state has expressly

**11.** *See* 47 U.S.C. § 227(b)(3) (West 2004) (emphasis added).

**12.** *See Murphey v. Lanier,* 204 F.3d 911, 913–15 (9th Cir.2000); *Chair King v. Houston Cellular Corp.,* 131 F.3d 507, 513 (5th Cir.1997); *Int'l Science & Tech. Inst., Inc. v. Inacom Comm., Inc.,* 106 F.3d 1146, 1152 (4th Cir. 1997); *ErieNet,Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 520 (3d Cir.1998); *Foxhall Realty Law Offices, Inc. v. Telecomm. Premium Servs., Ltd.,* 156 F.3d 432, 438 (2d Cir.1998); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287, 1289, *modified* 140 F.3d 898 (11th Cir.1998).

**13.** *See Murphey,* 204 F.3d at 913–14; *Chair King,* 131 F.3d at 511–13; *Int'l Science,* 106 F.3d at 1151; *ErieNet,* 156 F.3d at 514–15; *Foxhall Realty,* 156 F.3d at 435; *Nicholson,* 136 F.3d at 1289.

**14.** *See Int'l Science,* 106 F.3d at 1156; *Murphey,* 204 F.3d at 914; *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.,* 135 S.W.3d 365, 381–82 (Tex.App.—Hous. (14 Dist.)

2004); *Mulhern v. MacLeod,* 441 Mass. 754, 808 N.E.2d 778, 779–82 (2004); *Autoflex Leasing, Inc. v. Mfg. Auto Leasing, Inc.,* 16 S.W.3d 815, 817 (Tex.App.—Fort Worth 2000); *Schulman v. Chase Manhattan Bank,* 268 A.D.2d 174, 177–79, 710 N.Y.S.2d 368 (N.Y.App.Div.2000); *Lary v. Flasch Bus. Consulting,* 878 So.2d 1158, 1161–63, 2003 WL 22463948, *2–5 (Ala.Civ.App.2003); *Condon v. Office Depot, Inc.,* 855 So.2d 644, 645–48 (Fla.Dist.Ct.App.2003); *Kaufman v. ACS Sys., Inc.,* 2 Cal.Rptr.3d 296, 306–12, 110 Cal. App.4th 886 (2003); *Reynolds v. Diamond Foods & Poultry,* 79 S.W.3d 907, 908–10 (Mo. 2002); *Zelma v. Market U.S.A.,* 343 N.J.Super. 356, 778 A.2d 591, 593–98 (2003); *Aronson v. Fax.com, Inc.,* 51 Pa. D. & C.4th 421, 423–36 (2001); *Hooters of Augusta, Inc. v. Nicholson,* 245 Ga.App. 363, 537 S.E.2d 468, 470–71 (2000).

**15.** Robert R. Biggerstaff, *State Courts and the Telephone Consumer Protection Act of 1991: May States Opt In? Can States Opt Out?,* 33 CONN L. REV. 407, 412–13 (2001); *GTE Mobilnet,* 135 S.W.3d 365, 374.

permitted the claims by state legislation.[16] In doing so, the *Autoflex* court stated that it based its holding on the "plain and ordinary" meaning of the statute "in order to give effect to the legislature's intent."[17] The *Autoflex* court was one of the first state courts in the country to interpret this clause.[18] Unfortunately, the *Autoflex* court neither explained how a "plain and ordinary" reading of the statute mandated an "opt-in" approach, nor correctly interpreted federal case law on which it relied.[19] Therefore, this court does not find *Autoflex* at all persuasive. Moreover, requiring states to "opt-in" before they could hear private damage actions under the TCPA would be akin to Congress commanding state legislatures to legislate.[20] Such an interpretation would most likely run afoul of the Tenth Amendment.[21]

### B. The "Opt–Out" Approach

According to courts adopting an "opt-out" approach, the "if otherwise permit-

ted" clause in § 227(b)(3) means that persons may bring private damage claims under the TCPA in state court unless the state prohibits such actions.[22] Currently, five state appellate courts have solidly adopted this view, stating that states could "refuse jurisdiction" and "close their doors" to TCPA actions.[23] Until 2003, however, no court considering this issue had found that its state had, in fact, "opted-out" of hearing private causes of action under the TCPA.

In a decision that is currently on review by the Maryland Supreme Court, the Court of Special Appeals of Maryland became the first court in the country to hold that its state had specifically "opted-out" of jurisdiction over a TCPA claim arising under 47 U.S.C. § 227(b)(3).[24] In *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, the Maryland appeals court noted that the Maryland law regulating telecommunications creates a private right of ac-

---

16. 16 S.W.3d 815, 817 (Tex.App.2000) (stating, "[W]e hold that Congress intended the states to pass legislation or promulgate court rules consenting to state court actions based on the TCPA, before such suits under the TCPA may be brought in state courts.").

17. *Id.* (citing *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997) for the proposition that in construing a statute, a court's primary objective is to give effect to the legislature's intent by considering the plain meaning of the enactment).

18. *See* Biggerstaff, *supra* note 9, at 414–15.

19. *See id.* n. 15. Citing *Nicholson, Chair King, Murphey*, and *International Science*, the *Autoflex* court stated that four federal courts of appeal had addressed the issue. In fact, this precise issue was not before any of these courts. The *Autoflex* court also completely misconstrued the Eleventh Circuit's holding in *Nicholson* as stating that the "if otherwise permitted" language authorizes private rights of action only if state law "specifically authorizes" such action. In fact, when the *Nicholson* court said that, it was reiterating what the

district court had held; the *Nicholson* court never addressed that precise issue and ultimately vacated and remanded the district court's decision. *See Nicholson*, 136 F.3d at 1289.

20. *International Science*, 106 F.3d at 1157.

21. *See New York v. United States*, 505 U.S. 144, 179–80, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (holding that the federal Low–Level Radioactive Waste Policy Act's provision, requiring states to pass regulations, was inconsistent with the Tenth Amendment).

22. *See, e.g. Kaufman*, 2 Cal.Rptr.3d at 306; *Hooters of Augusta*, 537 S.E.2d at 471.

23. *See GTE Mobilnet*, 135 S.W.3d 365, 381–82; *Kaufman*, 2 Cal.Rptr.3d at 306–12; *Reynolds*, 79 S.W.3d at 908–10; *Zelma v. Market U.S.A.*, 778 A.2d at 593–98; *Hooters of Augusta, Inc.*, 537 S.E.2d at 470–71.

24. 149 Md.App. 219, 815 A.2d 816, 825 (2003), *cert granted*, 374 Md. 358, 822 A.2d 1224 (2003).

tion for violations of the unsolicited telephone call provisions, but does not provide for a private right of action for violations of the unsolicited facsimile provision.[25] Based on what the court interpreted as the Maryland legislature's clear intent not to hear private causes of action for violations of any unsolicited facsimile law, the *Ponte Architects* court affirmed the lower court's decision granting the defendants' motion to dismiss for failure to state a claim.[26]

Virtually all of the state courts endorsing an "opt-out" approach have based their reasoning on the Fourth Circuit's instructive language in *International Science*.[27] In *International Science*, the Fourth Circuit was called upon to interpret the TCPA's "if otherwise permitted" clause as a response to International Science's constitutional arguments.[28] International Science had argued that the "if otherwise permitted" clause in the TCPA meant that the TCPA could only be enforced in states with their own statutory prohibitions against unsolicited fax transmissions (the "opt-in" view).[29] Thus, International Science maintained that, should the Fourth Circuit interpret the TCPA as authorizing exclusive state jurisdiction, the statute would violate the equal protection clause of the Fourteenth Amendment, as well as the Tenth Amendment.[30] In responding to International Science's equal protection ar-

gument, the Fourth Circuit simultaneously rejected the "opt-in" approach and endorsed an "opt-out" interpretation:

> The clause in 47 U.S.C. § 227(b)(3) "if otherwise permitted by the laws or rules of court of a State" does not condition the substantive right to be free from unsolicited faxes on state approval.... Rather, the clause recognizes that states may *refuse* to exercise the jurisdiction authorized by the statute. Thus, a state could decide to *prevent* its courts from hearing private actions to enforce the TCPA's substantive rights.... [C]oncerned over the potential impact of private actions on the administration of state courts, Congress included a provision to allow the states to *prohibit* private TCPA actions in their courts....[31]

Later in the opinion, in its analysis of International Science's Tenth Amendment argument, the Fourth Circuit acknowledged that, in *Testa v. Katt*, the Supreme Court held that the Supremacy Clause provides that state courts may not refuse to enforce federal claims.[32] However, the *International Science* court noted that *Testa's* holding was limited to federal enactments which provide for concurrent state and federal court jurisdiction.[33] The Fourth Circuit refused to extend *Testa's* holding to the TCPA, where Congress pro-

---

25. *Id.* (discussing the Maryland Telephone Solicitations Act).

26. *Id.* at 827.

27. *See Hooters of Augusta,* 537 S.E.2d at 470–71 (quoting *International Science,* 106 F.3d at 1156–57).

28. *International Science,* 106 F.3d at 1156.

29. *Id.* (explaining International Science's argument to the court).

30. *Id.*

31. *International Science,* 106 F.3d at 1156–57 (emphasis added). Moreover, both the Second and Ninth Circuits have quoted the above language in *International Science* to resolve similar equal protection arguments before them. *See Murphey,* 204 F.3d at 914; *Foxhall Realty,* 156 F.3d at 438.

32. *International Science,* 106 F.3d at 1157–58.

33. *Id.* (noting that, since *Testa v. Katt,* state courts may not refuse to enforce federal claims, at least where the federal enactment provides for *concurrent* jurisdiction in state and federal courts).

vided for exclusive state jurisdiction.[34] In so doing, the *International Science* court noted that adopting an "opt-out" approach would avoid the constitutional issue left unresolved by *Testa*, i.e., whether the TCPA would violate the Tenth Amendment by coercing states to enforce federal law.[35] Interestingly, the Fourth Circuit apparently neglected to realize that allowing states to "opt-out" could create a different constitutional issue, namely whether Congress can give a state authority to arbitrarily close its courts to a federal remedy. It is this constitutional consideration which forms the basis of the "acknowledgment" approach.

### C. The "Acknowledgment" Approach

The final interpretation of the "if otherwise permitted" clause is the "acknowledgment" approach. Courts and scholars supporting this approach reason that the "if otherwise permitted" language in the TCPA "merely acknowledges the principle that states have the right to structure their own court systems and that state courts are not obligated to change their procedural rules to accommodate TCPA claims."[36] Courts and commentators advocating this interpretation have based their opinions on (1) the Supremacy Clause's requirement that states provide a judicial forum for prosecution of federal claims and (2) the legislative history of the TCPA.[37]

In *Schulman v. Chase Manhattan Bank*, for example, the New York Appellate Division for the Second Department held that the TCPA's "if otherwise permitted" language meant only that states are not required to change their procedural rules to accommodate TCPA claims.[38] The reasoning behind *Schulman's* holding was that allowing states to either "opt-in" or "opt-out" would effectively violate the Supremacy Clause.[39] Quoting the Supreme Court's decision in *Howlett v. Rose*, the *Schulman* court noted that the Supremacy Clause makes federal law "the supreme law of the land" and "charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure."[40] Citing other Supreme Court decisions, notably *Testa v. Katt*, the *Schulman* court concluded that "a state court may not refuse jurisdiction over a claim based on Federal law."[41]

The *Schulman* court also used the legislative history of the TCPA to support its view. Senator Hollings, the sponsor of the bill, provided some insight into the meaning of § 227(b)(3) when he addressed Congress before the bill's passage.[42] After

---

**34.** *Id.*

**35.** *Id.* at 1158.

**36.** *Schulman v. Chase Manhattan Bank*, 268 A.D.2d 174, 179, 710 N.Y.S.2d 368 (N.Y.App. Div.2000); Biggerstaff, *supra* note 9, at 423–33.

**37.** *See* Biggerstaff, *supra* note 9, at 423–33; *GTE Mobilnet*, 135 S.W.3d 365, 381–82; *Mulhern*, 808 N.E.2d at 780.

**38.** *Id.*

**39.** *Id.* at 177–79, 710 N.Y.S.2d 368.

**40.** *Id.* at 178, 710 N.Y.S.2d 368 (citing *Howlett v. Rose*, 496 U.S. 356, 367, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990)).

**41.** *Id.* at 179, 710 N.Y.S.2d 368 (citing *Mondou v. New York, N.H. & H.R.R. Co.*, 223 U.S. 1, 56–57, 32 S.Ct. 169, 56 L.Ed. 327 (1912); *Testa v. Katt*, 330 U.S. 386, 394, 67 S.Ct. 810, 91 L.Ed. 967 (1947)).

**42.** *Id.* at 178–79, 710 N.Y.S.2d 368. *See also* Biggerstaff, *supra* note 9, at 417–18 (noting that, although divining congressional intent from a "short soliloquy of legislative history" is questionable, Hollings' statement is the only expression of congressional intent available).

explaining the general principle that the provision would allow consumers to bring an private damage action in state court, Senator Hollings addressed the meaning of the "if otherwise permitted" language.[43] He stated, "The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action... Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court."[44] Thus, proponents of the "acknowledgment" approach argue that the "if otherwise permitted" language means that states are permitted to determine *which* of their courts will hear TCPA claims, not *whether* their state will be open to such claims.

Despite commentary urging courts to adopt an "acknowledgment" approach based upon the "delicate balance of federalism,"[45] *Schulman* remains the only state appellate court adopting the view that the Supremacy Clause mandates an "acknowledgment" interpretation.[46] Many courts have considered the Supremacy Clause argument persuasive in their discussion of the issue.[47] However, four state courts ultimately found it unnecessary to reach the issue of whether allowing states to "opt-out" would violate the constitution.[48]

For example, the Supreme Judicial Court of Massachusetts recently stated, "We need not decide whether the 'if otherwise permitted' language does indeed permit States to refuse jurisdiction over private TCPA claims."[49] The *Mulhern* court concluded by stating that, "To the extent there is any merit to that claim... the [Massachusetts Legislature] enacted the Telemarketing Solicitation Act... which itself regulates telemarketing solicitation, including unsolicited facsimile transmissions."[50] Thus, while clearly endorsing *Schulman*'s interpretation of Senator Hollings' commentary, state courts in Massachusetts, Florida, Pennsylvania, and Alabama avoided the constitutional question left unanswered by *Testa*.[51]

### D. Analysis of the Emerging Approaches

 In this case, Defendants argue that the language of the TCPA, as well as federal case law, requires this court to adopt an "opt-in" approach. Because Louisiana does not have a law enabling a private right of action under the TCPA, Defendants argue this case should be dismissed. Plaintiffs, on the other hand, urge this court to adopt an "opt-out" approach. Because Louisiana does not prohibit a pri-

---

43. *Id.* at 178, 710 N.Y.S.2d 368 (quoting 137 Cong. Rec. S16204–16206 (daily ed. Nov. 7, 1991)).

44. *Id.* at 178–79, 710 N.Y.S.2d 368 (quoting 137 Cong. Rec. S16204–16206 (daily ed. Nov. 7, 1991)).

45. Biggerstaff, *supra* note 9, at 433.

46. *See Schulman,* 268 A.D.2d at 179, 710 N.Y.S.2d 368.

47. *See Lary,* at 1663, 2003 WL 22463948 at *5; *Condon,* 855 So.2d at 647–48; *Zelma,* 778 A.2d at 596–98; *Aronson,* 51 Pa. D. & C.4th at

435–36; *Mulhern v. MacLeod,* 441 Mass. 754, 808 N.E.2d 778, 779–82 (2004).

48. *See Lary,* at 1663, 2003 WL 22463948 at *5; *Condon,* 855 So.2d at 647–48; *Zelma,* 778 A.2d at 596–98; *Aronson,* 51 Pa. D. & C.4th at 435–36; *Mulhern v. MacLeod,* 441 Mass. 754, 808 N.E.2d 778, 779–82 (2004).

49. *Mulhern,* 808 N.E.2d at 782.

50. *Id.*

51. *See Lary,* at 1663, 2003 WL 22463948 at *5; *Condon,* 855 So.2d at 647–48; *Zelma,* 778 A.2d at 596–98; *Aronson,* 51 Pa. D. & C.4th at 435–36; *Mulhern v. MacLeod,* 441 Mass. 754, 808 N.E.2d 778, 779–82 (2004).

vate right of action under the TCPA-and, in fact, has a state statute similar to the TCPA—Plaintiffs argue Defendants' Motion to Dismiss should be denied on this issue.

The Fifth Circuit recently stated that, when determining the legislative intent of an ambiguous provision of a statute, "[the court] must delve into the history and purpose of the statute."[52] This court is also mindful of the axiom of statutory interpretation that courts should favor an otherwise permissible interpretation of a statute to avoid serious constitutional questions.[53] It is for these reasons that this court adopts an "acknowledgment" approach to the "if otherwise permitted" language in 47 U.S.C. § 227(b)(3). This court's holding is based purely upon the legislative history and purpose of that provision of the statute, as articulated by Senator Hollings, the bill's sponsor. He stated, "The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action... Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court."[54] Thus, although this court acknowledges the possibility that the Supremacy Clause precludes states from closing their doors to private rights of action under federal law when the state has exclusive jurisdiction, this court's holding is not based upon an extension of *Testa*. Because the legislative his-

tory is clear, this court simply does not need to reach this constitutional question.

In reaching a conclusion to adopt an "acknowledgment" approach, this court carefully considered the Fourth Circuit's decision in *International Science*, and the Second and Ninth Circuits reliance on that decision. As explained above, *dicta* from *International Science* suggests that an "opt-out" approach is the correct interpretation of the private right of action provision of the TCPA.[55] Nevertheless, a careful reading of *International Science, Murphey*, and *Foxhall Realty* reveals that these courts did not consider the potential constitutional implications raised by an "opt-out" approach.[56] Moreover, there is no indication that these courts even acknowledged the possibility of a third approach which could avoid the dichotomy of either "opt-in" or "opt-out." Accordingly, because this court has had the benefit of reading seven years' worth of jurisprudence since *International Science*, this court does not find the Fourth Circuit's opinion a complete or accurate analysis of the issue.

Nevertheless, one state appellate court recently relied on *International Science* in holding that an "opt-out" interpretation was a correct reading of the statute. In *Chair King, Inc. v. GTE Mobilnet of Houston*, the Texas Court of Appeals adopted the view that states may prohibit private TCPA actions in their courts.[57] Unlike many state court decisions before

---

52. *Chair King*, 131 F.3d at 511.

53. *See, e.g. Public Citizen v. Dept. of Justice*, 491 U.S. 440, 446–67, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989).

54. 137 Cong. Rec. S16204–16206 (daily ed. Nov. 7, 1991).

55. *See* 106 F.3d at 1156–57.

56. *See id.* at 1158 (stating that Congress avoided *any* constitutional issue by refusing to coerce states to hear private TCPA actions....) (emphasis added); *Murphey*, 204 F.3d at 914 (citing *International Science*, 106 F.3d at 1157); *Foxhall Realty*, 156 F.3d at 438 (quoting *International Science*, 106 F.3d at 1156).

57. 135 S.W.3d 365, 381–82 (citing *International Science*, 106 F.3d at 1156–58).

it, however, the *GTE Mobilnet* court did not simply ignore the "acknowledgment" approach. Because the *GTE Mobilnet* court specifically rejected the "acknowledgment" interpretation,[58] it is worth mentioning here.

The *GTE Mobilnet* court first argued that an "acknowledgment" approach would render the statute "doubly redundant." The court noted that the "if otherwise permitted" language is followed in the statute by language which itself acknowledges that state courts will follow procedural rules such as subject matter jurisdiction, amount in controversy, or venue.[59] The statute states in pertinent part, "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring *in an appropriate court of that State....*"[60] The *GTE Mobilnet* court reasoned that the "in an appropriate court" clause is the clause in which Congress indicated states could have control over procedure; interpreting the "if otherwise permitted" clause that way would be redundant and render the "in an appropriate court" clause meaningless.[61]

Next, the *GTE Mobilnet* court rejected the argument posed by some courts and scholars that an "opt-out" interpretation would "upset the fragile balance of this country's federal system of government."[62] The court reasoned that "the federal system of government in our country is strong, and the opt-out interpretation gives effect to what its proponents conclude is the statutory directive from Congress under the Supremacy Clause."[63]

First, this court disagrees with *GTE Mobilnet*'s fundamental assumption that adopting an "acknowledgment" interpretation necessarily requires a court to find that the Supremacy Clause does not allow states to "opt-out."[64] As explained above, several courts have explicitly endorsed the acknowledgment approach, and simultaneously declined to reach the "opt-out" issue.[65] Next, this court seriously questions *GTE Mobilnet*'s position that the "opt-out" interpretation is the correct one because it "is the statutory directive from Congress under the Supremacy Clause."[66] As one commentator has suggested, absent a clear directive from Congress, it is far from settled whether the Constitution allows Congress to give a state authority to arbitrarily close its courts to a federal remedy.[67]

Finally, this court does not find that an "acknowledgment" interpretation of the "if otherwise permitted" clause renders 47

---

58. *See GTE Mobilnet,* 135 S.W.3d 365, 380–82.

59. *Id.* at 381–82.

60. 47 U.S.C. § 227(b)(3).

61. *GTE Mobilnet,* 135 S.W.3d 365, 381–82.

62. *Id.*

63. *Id.*

64. *See id.* at 375–76 (stating that under the acknowledgment interpretation, states may not "opt-out").

65. *See Lary,* at 1663, 2003 WL 22463948 at *5; *Condon,* 855 So.2d at 647–48; *Zelma,* 778 A.2d at 596–98; *Aronson,* 51 Pa. D. & C. 4th at 435–36; *Mulhern v. MacLeod,* 441 Mass. 754, 808 N.E.2d 778, 779–82 (2004).

66. *See GTE Mobilnet,* 135 S.W.3d 365, 381–82.

67. *See* Biggerstaff, *supra* note 9, at 426–28 (noting that courts should not construe a statute to alter any delicate constitutional balances without being certain that is what Congress intended and quoting Justice O'Connor in *Hilton v. S.C. Pub. Rys. Comm'n,* 502 U.S. 197, 209, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) as stating that this requirement "is not a mere canon of statutory interpretation. Instead, it derives from the Constitution itself.").

U.S.C. § 227(b)(3) doubly redundant.[68] To the contrary, the two statutory clauses in question are part of the same sentence; one of them refers to procedural rules and the other to jurisdictional rules. Together, the clauses support Senator Hollings' statements that 47 U.S.C. § 227(b)(3) leaves to the states the procedural and jurisdictional questions surrounding each state's enforcement of private rights of action.[69] For these reasons, this court finds *GTE Mobilnet* unpersuasive.

This court adopts an "acknowledgment" interpretation of the "if otherwise permitted" language in 47 U.S.C. § 227(b)(3). Since the Fourth Circuit's decision in *International Science*, there have been several court decisions and articles developing case law and commentary on this issue. Taking every view into consideration, this court concludes that an "acknowledgment" approach is consistent with the TCPA's history and purpose, and the most well-reasoned jurisprudence on the subject.[70] Accordingly, because Louisiana has courts of general jurisdiction and no party has pointed to a procedural or jurisdictional road block to such actions, this court holds that Plaintiffs have a private right of action to bring TCPA claims in Louisiana courts.

## II Whether the TCPA and the UTMA May be Prosecuted as Class Actions

■ Defendants argue that Plaintiffs may not bring their private damage claims as class actions because Congress did not intend for TCPA claims to be brought as class actions.[71] Similarly, Defendants contend that the UTMA's silence on whether private claims may be brought as class actions indicates the Louisiana legislature's intent to preclude class actions.[72] Plaintiffs, on the other hand, assert that Defendants should be estopped from asserting that the class action procedure is inappropriate because, when Defendants removed this action to federal court, they conceded that the class action status of the case provided the requisite amount in controversy for diversity jurisdiction.[73] Plaintiffs also note that neither the TCPA nor the UTMA excludes class action relief and that, if Congress or the Louisiana legislature had wanted to foreclose class action lawsuits, it could have included such a statutory provision.[74]

First, Plaintiffs' estoppel argument is unavailing. In this court's ruling denying Plaintiffs' motions to remand, it held that Congress's intent to preclude federal question jurisdiction over TCPA claims did not prevent a federal court from hearing TCPA claims pursuant to 28 U.S.C. § 1332.[75] This court also held that the parties in these cases had met the requirements of § 1332 because the parties were diverse and, on the face of the petitions, had met the requisite amount in controversy.[76] Although this court acknowledged

---

68. *See GTE Mobilnet,* 135 S.W.3d 365, 381–82.

69. *See* 137 CONG. REC. S16204–16206 (daily ed. Nov. 7, 1991).

70. *See Schulman,* 710 N.Y.S.2d at 370–72; *Lary,* at 1663, 2003 WL 22463948 at *5; *Condon,* 855 So.2d at 647–48; *Zelma,* 778 A.2d at 596–98; *Aronson,* 51 Pa. D. & C. 4th at 435–36; *Mulhern,* 808 N.E.2d at 779–82.

71. Mem. in Supp. of Mot. to Dismiss, p. 9.

72. *Id.,* p. 11.

73. Mem. in Opp. to Mot. to Dismiss, p. 14.

74. *Id.,* p. 15.

75. *Accounting Outsourcing, LLC, et al. v. Verizon Wireless Personal Communications, LP,* 294 F.Supp.2d 834, 840 (M.D.La.2003).

76. *Id.* (agreeing with the Magistrate's conclusion that, based upon the Fifth Circuit's holding in *Grant v. Chevron Phillips Chem. Co.,*

that the requisite amount in controversy existed because of the putative class action status, this court did not certify the classes, nor did it rule that the TCPA could be brought as a class action. Similarly, by removing this case to federal court, Defendants did not concede that TCPA claims could properly be brought as class actions but merely argued that, based on the allegations of the petitions, the jurisdictional amount was satisfied. Thus, Plaintiffs' equitable estoppel argument fails.

Next, this court notes that Defendants' argument here does not reach the merits of whether the putative classes in these cases should actually be certified. Rather, Defendants argue that, even assuming the classes met the certification requirements, claims based upon the TCPA and the UTMA simply cannot be brought as class actions. Defendants base their argument on the legislative history of both statutes. With regard to the TCPA, Defendants point to Senator Hollings' statement that, "[I]t would defeat the purposes of the [TCPA] if the attorneys' costs to consumers of bringing an action were greater than the potential damages." [77] With respect to the UTMA, Defendants note that

if the Louisiana legislature had wanted to provide for class actions, it could have done so in the statute.

In *Califano v. Yamasaki*, the Supreme Court entertained a similar argument from the Secretary of Health, Education, and Welfare with respect to the Social Security Act.[78] The Secretary relied on the language in § 205(g) of the Act and the legislative history of the Act to support his argument that class relief under the Social Security Act was inappropriate.[79] The Supreme Court dismissed the Secretary's argument, noting that, although § 205(g) contemplated suits filed by individuals, that provision contained "no *express* limitation of class relief." [80] The *Califano* court held that, "In the absence of a direct expression by Congress of its intent to depart from [the Federal Rules of Civil Procedure], class relief is appropriate in civil actions brought in federal court...." [81] Here, as in *Califano*, the text of the TCPA and the UTMA does not specify the essential "clear expression of congressional intent" to preclude application of Fed.R.Civ.P. 23.[82] Accordingly, Defendants' Motion to Dismiss is denied with respect to this issue.

L.P., 309 F.3d 864, 873 (5th Cir.2002), the parties had met the requisite amount in controversy because of the case's class action status).

77. *See* 137 Cong. Rec. S16204–01 (daily ed. Nov. 7, 1991).

78. 442 U.S. 682, 698–700, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

79. *See id.* at 699, 99 S.Ct. 2545 (stating that § 205(g) provides for actions by "any individual"); *Id.* at 699 n. 13, 99 S.Ct. 2545 (noting that Congress referred to claimants in the singular tense).

80. *Id.* at 699, 99 S.Ct. 2545 (emphasis added).

81. *Id.* at 700, 99 S.Ct. 2545; *see also In re Davis*, 194 F.3d 570, 577–78 (5th Cir.1999) (holding that the Federal Rules of Civil Procedure apply in all suits of a civil nature brought in federal court absent a direct expression by Congress).

82. *See id.; see also Giovanniello v. Hispanic Media Group USA, Inc.*, 2004 WL 1258014, *2 (N.Y.Sup.Ct.2004) (holding that TCPA actions cannot be brought as class actions in New York State because a New York rule of civil procedure requires explicit congressional intent to *allow* class actions when the statute specifies damages); *Rudgayzer & Gratt v. LRS Communications, Inc.*, 3 Misc.3d 159, 776 N.Y.S.2d 158, 163–66 (2003) (same).

## III Whether the TCPA and the UTMA Violate the Due Process Clause

### A. Whether the TCPA is Unconstitutionally Vague

Defendants argue that the TCPA is void for vagueness because (1) it does not clearly indicate whose conduct is prohibited; (2) it does not clearly indicate its geographic reach; and (3) it does not clearly define proscribed facsimiles.[83] The vagueness doctrine states that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." [84] A court may impute to persons of common intelligence certain extrinsic knowledge, such as any limiting statutory construction adopted by a court or enforcement agency, general and specialized knowledge regarding the definition of words, and knowledge of legislative history.[85] Consequently, the TCPA must be clear to persons of common intelligence when viewed in light of this extrinsic knowledge.

■ Before determining whether the TCPA is unconstitutionally vague, this court must determine whether the TCPA regulates constitutionally protected speech. If it does, it is subject to a more rigid vagueness test.[86] Defendants argue that the TCPA regulates First Amendment freedoms and is therefore subject to a more rigorous vagueness test.[87] The United States maintains that a less stringent vagueness test applies because the TCPA is an economic regulation.[88] Meanwhile, Plaintiffs argue that the TCPA is not a speech restriction at all.[89] Plaintiffs' argument that the TCPA is not a speech regulation but only a restriction of a "delivery practice" misses the important point that even time, place, and manner restrictions of commercial speech implicate the Constitution.[90] Commercial speech is constitutionally protected as long as it is not misleading and does not relate to illegal activity.[91] Although the Supreme Court in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* held that economic regulations are subject to a less stringent vagueness test, it also stated that whether a law regulates constitutionally protected

83. Mem. in Supp. of Mot. to Dismiss, p. 12–16.

84. *Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

85. *See Grayned v. City of Rockford*, 408 U.S. 104, 110, 112, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Gov't Suppliers Consol. Serv., Inc. v. Bayh*, 133 F.R.D. 531, 540–41 (S.D.Ind.1990);

86. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *see Native American Arts, Inc. v. Village Originals, Inc.*, 25 F.Supp.2d 876, 880 (N.D.Ill.1998) (holding that commercial speech implicates First Amendment protection under *Village of Hoffman Estates* ).

87. *See* Mem. in Supp. of Mot. to Dismiss, p. 13 (citing *Village of Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. 1186).

88. *See* The United States' Mem. in Opp. to Mot. to Dismiss, p. 9.

89. *See* Pl.'s Mem. in Opp. to Mot. to Dismiss, p. 26.

90. *See Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995); *Hill v. Colorado*, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000).

91. *See Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

conduct is the most important factor in determining which test applies.[92] Therefore, because the TCPA regulates constitutionally protected commercial speech, it must satisfy a more rigid vagueness test, such that even one impermissible application would render the TCPA vague.[93]

### 1. Whether the TCPA Clearly Indicates Whose Conduct is Prohibited

■ Defendants argue that the TCPA is vague because it does not clearly indicate whether fax broadcasters, advertisers, or "entities" are covered under the statute. The relevant portion of the TCPA states, "It shall be unlawful for *any person . . . . to use* any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." [94]

Defendants first argue that the TCPA is void for vagueness because the Federal Communications Commission has wavered as to whether the TCPA applies to "fax broadcasters," i.e., those individuals or entities hired by an advertiser to transmit facsimile advertisements.[95] In 1995, the FCC's position was that the TCPA only applied to advertisers, not "service providers" or "fax broadcasters." [96] Eight years later, however, the FCC changed course: "a fax broadcaster will be liable for an unsolicited fax if there is a high degree of involvement or actual notice on the part of the broadcaster." [97] Nevertheless, the proper inquiry under the void-for-vagueness doctrine is not whether an administrative agency has given consistent interpretations of a given statute. Rather, the court must determine whether persons of common intelligence could understand the statute's prohibition, in light of any limiting statutory construction adopted by an enforcement agency.[98] Given the FCC's clear and unequivocal interpretations, this court finds that they could.

■ Second, Defendants argue that the TCPA is vague because it is not clear that it applies to advertisers who hire third-parties or fax broadcasters to do their fax advertising for them.[99] The crux of Defendants' argument is that the plain language of the TCPA is silent regarding advertiser

---

92. *See* 455 U.S. at 499, 102 S.Ct. 1186.

93. *See Village of Hoffman Estates,* 455 U.S. at 494 n. 5, 102 S.Ct. 1186 ("A 'facial' challenge, in this context, means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.'") (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

94. 47 U.S.C. § 227(b)(1)(C) (1991) (emphasis added). Plaintiffs' argument that "[t]he term 'use' inherently includes any steps toward the transmission of unsolicited faxes" is unconvincing. First, Plaintiffs fail to cite any authority to support this proposition. Additionally, this court will not attempt to decipher the meaning of a statutory term independent of its context. *See Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 511 (5th Cir. 1997) ("In determining the legislative intent [of the TCPA], we follow the cardinal rule that a statute is to be read as a whole, since the meaning of the statutory language, plain or not, depends on context.").

95. *See* Reply Mem. in Supp. of Mot. to Dismiss, p. 6–7.

96. Reply Mem. in Supp. of Mot. to Dismiss, p. 6 (citing 60 Fed.Reg. 42068–01 (Aug. 15, 1995)).

97. *See* Reply Mem. in Supp. of Mot. to Dismiss, p. 6 (citing 68 Fed.Reg. 44144, 44169 (July 25, 2003)).

98. *See Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (citing *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

99. *See* Mem. in Supp. of Mot. to Dismiss, pp. 15–16.

liability. According to Defendants, "If Congress had intended to punish the person on whose behalf the 'user' sent the facsimiles, it could have expressly done so."[100] However, as the United States points out, Defendants fail to account for a rule of statutory construction that makes explicit vicarious liability unnecessary.[101] According to the Supreme Court in *Meyer v. Holley*, congressional tort actions implicitly include the doctrine of vicarious liability, whereby employers are liable for the acts of their agents and employees.[102] In *Meyer*, the Supreme Court applied the doctrine of vicarious liability to the Fair Housing Act, despite the Congress's silence on the subject.[103] In this case, Congress did not explicitly apply the doctrine of vicarious liability to the TCPA. Nevertheless, given the Supreme Court's ruling in *Meyer*, this court finds that persons of common intelligence would know that the TCPA applies to advertisers.

Furthermore, at least two courts have interpreted the TCPA to include both fax broadcasters and advertisers. In *Covington & Burling v. International Marketing & Research, Inc.*, the Superior Court of the District of Columbia noted that courts have applied the TCPA to advertisers as well as fax broadcasters.[104] Significantly, in *Texas v. American Blastfax*, the Western District of Texas wrote, "It would circumvent the purpose of the TCPA to exempt [a fax broadcaster] from potential liability [under the TCPA] on the theory that it plays no role in sending the advertisements at issue."[105] The *American Blastfax* court found that by merely "using a fax machine to send unsolicited advertisements," a fax broadcaster was engaging in "the precise conduct outlawed by the TCPA."[106] This court finds *American Blastfax*'s analysis applicable to advertisers as well. Interpreting the TCPA to exempt either fax broadcasters or advertisers would effectively allow advertisers to make an end-run around the TCPA's prohibitions.

■ Third, the parties dispute whether the meaning of "person" in the TCPA encompasses both persons and entities.[107] Chapter 5 of Title 47 of the United States Code, which includes the TCPA, specifically defines a "person" as "an individual, partnership, association, joint-stock company, trust, or corporation."[108] Therefore, persons of common intelligence understand that the term "person," as used in the TCPA, encompasses both persons and entities.

---

**100.** *See id.* at p. 16.

**101.** *See* The United States' Mem. in Opp. to Mot. to Dismiss, p. 14.

**102.** *See* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) ("[T]he Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.... It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.").

**103.** *Id.* at 286, 123 S.Ct. 824.

**104.** 2003 WL 21384825, *7 (D.C.2003), *amended on reconsid., in part, by* 2003 WL 21388272 (D.C.Super May 14, 2003) (citations omitted).

**105.** 121 F.Supp.2d 1085, 1090 (W.D.Tex. 2000).

**106.** *Id.* at 1089.

**107.** *See* Mem. in Opp. to Mot. to Dismiss, p. 29; *see* Mem. in Supp. of Mot. to Dismiss, p. 15; *see* U.S.'s Mem. in Opp. to Mot. to Dismiss, pp. 9–10.

**108.** 47 U.S.C. § 153(32).

### 2. Whether the Geographic Reach of the TCPA is Vague

■ Defendants also contend that the geographic scope of the TCPA is vague. The TCPA regulates "any person *within the United States....*"[109] Defendants' plain language argument, which posits that the TCPA only applies to domestic facsimiles, rests on the "ordinary meaning" of the term "within."[110] However, the meaning of this term must be deciphered from its statutory context.[111] The Communications Act of 1934, of which the TCPA is a part, states, "The provisions of this chapter shall apply to all interstate and *foreign communication* by wire or radio."[112] Although the Communications Act exempts certain provisions from extraterritorial application, it does not exempt the TCPA.[113] When considered in the context of the Communications Act as a whole, persons of common intelligence would know what geographic scope is covered by the TCPA.

### 3. Whether the TCPA Clearly Describes Which Facsimiles are Proscribed

■ Next, Defendants argue that the TCPA does not clearly identify which facsimiles it prohibits. Defendants maintain that the TCPA does not clearly distinguish between commercial and noncommercial facsimiles and that the phrase "prior express invitation or permission" is vague.[114] In response, the United States argues claims that Defendants lack constitutional footing to challenge the vagueness of the TCPA.[115] The TPCA prohibits the sending of "unsolicited advertisements," which it defines as "any material advertising the *commercial availability or quality of any property, goods, or services* which is transmitted to any person without that person's *prior express invitation or permission.*"[116]

. Preliminarily, this court notes that Defendants may bring a facial challenge to the TCPA.[117] According to *Village of Hoffman Estates,* where no constitutionally protected conduct is implicated, "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."[118] However, because Defendants' commercial speech is protected by the First Amendment, the TCPA must be clear in all of its applications, regardless of whether those applications

---

109. 47 U.S.C. § 227(b)(1)(A) (emphasis added).

110. *See* Mem. in Supp. of Mot. to Dismiss, p. 16.

111. *See Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 511 (5th Cir.1997).

112. 47 U.S.C. § 152(a) (emphasis added).

113. *Id.* at § 152(b) ("Except as provided in sections through 223 through 227 [the TCPA is section 227]....nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to....any carrier engaged in interstate or foreign communication.").

114. *See* Mem. in Supp. of Mot. to Dismiss, p. 16–18.

115. *See* The United States' Mem. in Opp. to Mot. to Dismiss, p. 12.

116. 47 U.S.C. § 227(a)(4) (emphasis added).

117. *See FW/PBS Inc. v. City of Dallas,* 493 U.S. 215, 222, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citing *City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 n. 15, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)) ("Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context....").

118. 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.").

involve Defendants' conduct.[119]

Nevertheless, Defendants' vagueness challenge to this provision of the TCPA fails. The detailed definition of "unsolicited advertisements" set forth in the TCPA clearly distinguishes between commercial and noncommercial facsimiles. Simply put, the TPCA only prohibits those facsimiles which advertise goods, property, or services.[120] The hypothetical situations put forth by Defendants which allegedly illustrate the vagueness of the "unsolicited advertisements" provision can all be easily resolved by referring to § 227(a)(4). Faxes involving charitable events, an essay contest for children, political messages, and consumer warnings simply do not have anything to do with advertising goods, property, or services. Persons of common intelligence would not have to guess at the meaning of this provision of the TCPA.

Additionally, the provision requiring the sender of a fax to receive "express invitation or permission" from the recipient is likewise not vague. In July 2003, the FCC amended its longstanding interpretation of how a sender could satisfy the TCPA's requirement for "prior express invitation or permission." For over ten years, the FCC's rule was that an established business relationship was deemed to be invited or permitted by the recipient. In July 2003, however, the FCC concluded that "express invitation or permission" required the consent to be in writing, includ-

ing the recipient's signature.[121] As stated above, Defendants are incorrect that an agency's varying rules and regulations can render a statute void for vagueness. Persons of common intelligence could understand the TCPA's "prior express invitation or permission" clause, in light of the FCC's clear regulations.[122]

### B. Whether the Damages Provisions of the TCPA and the UTMA are Severe and Oppressive

[12] This section addresses the dispute between the parties regarding whether the damages provisions of the TCPA and UTMA violate due process. Under the TCPA, a person may recover "actual monetary loss from such a violation, or ... receive $500 in damages for each such violation, whichever is greater...." [123] Those who violate the UTMA "shall be fined not more than five hundred dollars or imprisoned not more than thirty days, or both." [124] Defendants, relying on *BMW of North America v. Gore* [125] and *State Farm Automobile Insurance Company v. Campbell*,[126] claim that the TCPA and UTMA impose "grossly excessive" damages in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments.[127] However, both *Campbell* and *Gore* are distinguishable from this case. At the heart of the Court's rulings in those cases was the concern that persons receive fair notice regarding the nature and sever-

---

**119.** *See id.* at 494–95, 102 S.Ct. 1186.

**120.** *See* 47 U.S.C. § 227(a)(4).

**121.** Reply Mem. in Supp. of Mot. to Dismiss, p. 10 (citing 66 Fed.Reg. 44144, 44158, 44168 (July 25, 2003)).

**122.** *See Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

**123.** 47 U.S.C. § 227(b)(3)(B).

**124.** La.Rev.Stat. Ann. § 51:1747(A).

**125.** 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

**126.** 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

**127.** Mem. in Supp. of Mot. to Dismiss, p. 23.

ity of the punishment inflicted upon them.[128] In contrast to those cases, which involved damages awards set by juries, the TCPA and UTMA impose statutory damages. Consequently, Defendants can hardly complain they had no fair notice regarding the severity of the potential punishment.[129] This court refuses to extend the holdings of *Gore* and *Campbell* beyond their intended application.[130]

Nevertheless, due process challenges to statutory damages are not unprecedented. In *St. Louis, I.M. & S. Ry. Co. v. Williams*, the Supreme Court held that statutory penalties may not be "so severe and oppressive as to be wholly disproportional to the offense and obviously unreasonable."[131] In addressing this standard, the Court recognized that statutory damages addressing "public wrongs" need not "be confined or proportioned to [actual] loss or damages...."[132] Recently, the Northern District of Illinois and a New Jersey Superior Court used *Williams* to uphold the damages provisions of statutes which redressed public wrongs.[133] Additionally, the Western District of Texas and the Southern District of Indiana found the TCPA constitutional under the *Williams* analysis.[134] Those courts noted that Congress identified two public harms addressed by the TCPA: (1) unsolicited fax advertisements impose difficult-to-quantify interruption costs on businesses and residences because fax machines typically can only handle one fax at a time; and (2) unsolicited commercial facsimiles shift the advertisers' printing costs to unwitting recipients.[135] Because the UTMA regulates the same conduct as the TCPA, it redresses the same public harms. Additionally, the legislative history of the UTMA indicates that it prevents another public harm: the invasion of privacy caused by unsolicited facsimiles.[136] Therefore, the damages provisions of the TCPA and the UTMA need not be proportional to the harm inflicted by unsolicited facsimiles.[137] As a

128. *See Campbell*, 538 U.S. at 417, 123 S.Ct. 1513; *see Gore*, 517 U.S. at 574, 116 S.Ct. 1589 ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.")

129. *See Lincoln v. Case*, 340 F.3d 283, 294 (5th Cir.2003) (reducing a punitive damages award to the statutory maximum civil penalty so that it may comport with due process).

130. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1165 (S.D.Ind.1997) (refusing to extend the judicial review of punitive damage awards set by juries to statutorily prescribed damage awards).

131. 251 U.S. 63, 67, 40 S.Ct. 71, 64 L.Ed. 139 (1919).

132. *Id.* at 66, 40 S.Ct. 71; *see Texas v. American Blastfax, Inc.*, 121 F.Supp.2d 1085, 1090 (W.D.Tex.2000).

133. *See Gennari v. Weichert Co. Realtors*, 288 N.J.Super. 504, 672 A.2d 1190, 1207 (1996) (noting that the driving force behind the treble damages provision of New Jersey's Consumer Fraud Act was to protect the public); *Native American Arts, Inc. v. Bundy–Howard, Inc.*, 168 F.Supp.2d 905, 914 (N.D.Ill.2001) (upholding the Indian Arts and Craft Act, which imposed $1,000 in damages, in part because it protected Indian artists from unfair competition and protected consumers from unknowingly purchasing imitation products).

134. *See American Blastfax*, 121 F.Supp.2d at 1090; *Kenro*, 962 F.Supp. at 1166–67.

135. *See American Blastfax*, 121 F.Supp.2d at 1091; *see Kenro*, 962 F.Supp. at 1166.

136. *See* H.R. Commerce Committee, Minutes of Meeting, 1991 Regular Session, May 8, 1991, at 15–16 (discussing House Bill No. 273 by Rep. Bruneau).

137. *See American Blastfax*, 121 F.Supp.2d at 1091; *see Kenro*, 962 F.Supp. at 1167.

result, the civil damages provisions of the TCPA and UTMA satisfy due process.[138]

## IV Whether the TCPA and the UTMA Violate the First Amendment

### A. Whether the Statutes Unconstitutionally Impose Strict Liability

Defendants argue that the TCPA inhibits the exercise of constitutionally protected commercial speech by imposing strict liability on those who send unsolicited commercial faxes.[139] Defendants specifically point to the fines which could be imposed in situations where senders mistakenly dialed or were mistakenly given the wrong fax number. Defendants argue that advertisers will be more reluctant to exercise their free speech rights, which will ultimately restrict the public's access to constitutionally protected commercial speech.[140] Plaintiffs respond by arguing that the TCPA does not need a scienter element because the statute is regulatory in nature and designed to protect the "public welfare."[141] The United States, on the other hand, provides an argument that the TCPA has a "built-in" scienter element because an advertiser necessarily knows whether the recipient of the fax has solicited it or not.[142]

The United States' argument regarding a "built-in" scienter element is defeated by the plain language of the statute. The relevant portion of the TCPA prohibits sending an unsolicited advertisement by fax.[143] Congress clearly did not intend to impose a $500 fine on only knowing or willful violators of the statute because the statute provides for three times the $500 penalty in situations where a court finds that "the defendant willfully or knowingly violated this subsection. . . ."[144]

Plaintiffs' argument that the TCPA is regulatory is also unavailing. Although this court recognizes the judicially-created exception for "public welfare offenses," under which some regulatory crimes do not require *mens rea*, the public welfare offense exception is narrow.[145] The Supreme Court has stated, "Typically, our cases recognizing such offenses involve statutes that regulate potentially harmful or injurious items."[146] Nevertheless, the Supreme Court has refused to apply the public welfare offense exception to statutes regulating child pornography and machine guns.[147] Similarly, the Fifth Circuit has refused to apply the exception to the Clean Water Act, regulating pollutants.[148] By analogy, unsolicited commercial facsimiles are clearly not "potentially harmful or injurious items," warranting an automatic exception to the general rule requiring *mens rea*.

138. See American Blastfax, 121 F.Supp.2d at 1091; see Kenro, 962 F.Supp. at 1167.

139. Mem. in Supp. of Mot. to Dismiss, p. 19.

140. Id. at p. 21.

141. Pl's Mem. in Opp. to Mot. to Dismiss, p. 34.

142. U.S.'s Mem. in Opp. to Mot. to Dismiss, p. 14.

143. 47 U.S.C. § 227(b)(1)(C).

144. See id. at § 227(b)(3).

145. See United States v. Ahmad, 101 F.3d 386, 391 (5th Cir.1996) re'hrg en banc denied, 108 F.3d 335 (5th Cir.1997) (discussing Staples v. United States, 511 U.S. 600, 607, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).

146. Staples, 511 U.S. at 607, 114 S.Ct. 1793 (citation omitted).

147. See United States v. X–Citement Video, Inc., 513 U.S. 64, 71, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); Staples, 511 U.S. at 607, 114 S.Ct. 1793.

148. See Ahmad, 101 F.3d at 391.

Defendants are correct that the Supreme Court has generally been wary of statutes which chill constitutionally protected speech by imposing criminal penalties on a strict liability basis. In *Smith v. People of the State of California,* for example, the Supreme Court held that imposing criminal penalties on a bookseller for selling obscene materials, without requiring the bookseller's knowledge that the material was obscene, violated the First Amendment.[149] The *Smith* court was especially concerned with the "hazard of self-censorship" imposed on the bookseller by requiring him to view the contents of every video in the store.[150] More recently, in *United States v. X–Citement Video, Inc.,* the Supreme Court read a scienter requirement into the Protection of Children Against Sexual Exploitation Act to avoid a First Amendment issue.[151] Significantly, however, neither the Supreme Court nor the Fifth Circuit has extended this line of jurisprudence to invalidate statutes which chill protected speech by imposing only *civil* penalties on a strict liability basis.

Defendants cite *Video Software Dealers Association v. Webster,* in which the Eighth Circuit extended *Smith* to invalidate on First Amendment grounds a Missouri statute which imposed civil penalties on a strict liability basis.[152] The *Webster* court downplayed its extension of the rule by viewing the statute at issue as "quasi-criminal." [153] In *dicta,* however, the *Webster* court stated, "In any event, we believe any statute that chills the exercise of First Amendment rights must contain a knowledge element." [154] State courts considering the constitutionality of the TCPA have distinguished *Webster* with the conclusory statement that "the TCPA is not a quasi-criminal statute." [155] It seems clear to this court, however, that the TCPA is fundamentally different from the statutes at issue in *Smith, X–Citement,* or *Webster* because the TCPA has the potential to chill only pure commercial speech, not speech entitled to full constitutional protection.

The Supreme Court has noted that the usual concern of chilling protected speech "applies weakly, if at all, in the ordinary commercial context." [156] In *Bates v. State Bar of Arizona,* the Supreme Court refused to apply the overbreadth doctrine to a regulation limiting attorney advertis-

**149.** *See* 361 U.S. 147, 155, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

**150.** *Id.* at 152–53, 80 S.Ct. 215.

**151.** 513 U.S. at 78, 115 S.Ct. 464 (noting that the court is required to read a statute to comport with the Constitution so long as such a reading does not contradict Congress's intent). The Protection of Children Against Sexual Exploitation Act of 1977 provides criminal penalties for "knowingly" transporting, shipping, receiving, distributing, or reproducing a visual depiction if such depiction involves the use of a minor engaging in sexually explicit conduct. The *X–Citement Video* court read the word "knowingly" to apply to the age of the performers and the sexually explicit nature of the material. *Id.*

**152.** *See Video Software Dealers Ass'n v. Webster,* 968 F.2d 684, 690 (8th Cir.1992).

**153.** *See id.* (noting that the statute at issue was contained within the "Crimes and Punishment" chapter of the Missouri code, and that each violation carried a fine of up to $200).

**154.** *See id.* (citing *Smith,* 361 U.S. at 151–53, 80 S.Ct. 215).

**155.** *See Texas v. American Blastfax, Inc.,* 121 F.Supp.2d 1085, 1092 n. 10 (W.D.Tex.2000); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.,* 135 S.W.3d 365, 388 (Tex.App.—Hous. (14 Dist.) 2004).

**156.** *See Bates v. State Bar of Arizona,* 433 U.S. 350, 380–81, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

ing.[157] The *Bates* court explained that "advertising is linked to commercial well-being" and is, therefore, not susceptible to being chilled. Furthermore, advertisers have extensive knowledge of the market and their products and are the best judges of when their conduct will violate the law.[158]

For this reason, courts considering constitutional challenges to strict liability statutes have distinguished *Smith* on commercial speech grounds. In *Lavey v. City of Two Rivers*, the Seventh Circuit considered the constitutionality of a city ordinance that, like the TCPA, regulated commercial speech and imposed penalties without a scienter element.[159] The *Lavey* court distinguished *Smith* by reasoning that, unlike booksellers, who cannot possibly read through all of their books to check for obscene content, advertisers have the means to inform themselves of the contents of their advertising.[160] Additionally, the Eastern District of New York upheld a New York City zoning ordinance which targeted advertising on a strict liability basis.[161] The ordinance in *Infinity Outdoor, Inc. v. City of New York* imposed a civil penalty for displaying an off-site advertisement without a permit.[162] Citing *Lavey*, the court reasoned, "[A]dvertisers will know whether or not they are in violation of the ordinance because they will know whether or not they have a permit."[163]

These cases, along with the Supreme Court's reasoning in *Bates*, convince this court that the TCPA's ban on unsolicited fax advertisements should not be invalidated on First Amendment grounds because of the statute's lack of scienter. Here, as in *Bates*, the economic motivations that inspire advertising neutralize the fear that protected speech will be chilled. Moreover, the advertisers subject to liability under the TCPA are in the best position to determine if the faxes they send are solicited and/or involve the commercial availability of property, goods, or services. Therefore, here, as in *Lavey* and *Infinity Outdoor*, the analogy to *Smith* "limps."[164] Although the TCPA might be used to impose fines even when advertisers mistakenly dial the wrong fax number, these situations are more appropriately handled through a case-by-case analysis of the fact situations to which the TCPA's damages should apply.[165]

■ For reasons stated above, the civil provisions of Louisiana's UTMA likewise do not unconstitutionally impose strict liability. With regard to Defendants' argument that the UTMA unconstitutionally imposes strict liability because of its criminal damages provision, this issue is not properly before the court at this time. Plaintiffs have only sued Defendants under the civil damages provisions of the UTMA. Although Defendants mentioned the UTMA's unconstitutionality as a defense in their answer to Plaintiffs' complaints, Defendants have not brought a counterclaim against the State of Louisiana for a declar-

157. *Id.*

158. *Id.*

159. *See* 171 F.3d 1110, 1116–17 (7th Cir. 1999).

160. *See id.* at 1117.

161. *See Infinity Outdoor, Inc. v. City of New York*, 165 F.Supp.2d 403, 431 (E.D.N.Y.2001).

162. *Id.* at 405.

163. *Id.* at 431.

164. *See Lavey*, 171 F.3d at 1117.

165. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615–16, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

atory judgment that the UTMA's criminal damages provision is unconstitutional. Accordingly, this court does not reach this issue.

## B. *The* Central Hudson *Analysis*

██ All of the parties appear to agree that the Defendants' First Amendment challenge to the TCPA should be analyzed according to the standards articulated in *Central Hudson*.[166] The *Central Hudson* test is used to determine whether a restraint on commercial speech violates the First Amendment.[167] The government may only regulate commercial speech if the regulation satisfies this four prong test. The court must determine whether the commercial speech is protected by the First Amendment; whether the purported government interest is substantial; whether the regulation directly and materially advances the government interest; and whether the restriction is "not more extensive than necessary" to serve the government interest.[168]

██ The First Amendment does not protect all forms of speech from government restrictions. There is a distinction between noncommercial speech and commercial speech whereby the latter has only limited protection under the First Amendment.[169] For instance, there are no limitations on the government's regulation of commercial speech that concerns unlawful action or is deceptive in nature.[170] Commercial speech is "expression related solely to the economic interests of the speaker and its audience."[171] Defendants assert that their advertisements are neither unlawful nor misleading, and Plaintiffs have not provided any evidence to the contrary. Consequently, Defendants' advertisements are entitled to limited protection under the First Amendment.

The second prong of the *Central Hudson* analysis is whether the government interests in eliminating cost-shifting and interruptions associated with unsolicited fax advertisements are substantial.[172] Defendants argue that the government's proffered interests were not substantial when

166. Defendants appear to concede that the TCPA is content-neutral insofar as it does not consider the content of the advertisement before making its sender civilly liable. Nevertheless, Defendants also recognize that the TCPA only restricts commercial—and not political or other non-commercial—faxes. In *City of Cincinnati v. Discovery Network, Inc.*, the Supreme Court considered the constitutionality of a Cincinnati ordinance which banned news racks containing commercial handbills, yet allowed news racks containing non-commercial newspapers. *See* 507 U.S. 410, 414, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). Although the Supreme Court affirmed the Sixth Circuit's conclusion that the ordinance violated the First Amendment because it failed the third prong of *Central Hudson,* the *Discovery Network* court implied that using the *Central Hudson* test may not have been proper because the ordinance's distinction between commercial and noncommercial speech rendered the ordinance content-based. *Id.* at 417–19, 113 S.Ct. 1505. Given the

Supreme Court's continued adherence to the *Central Hudson* test in *United States v. Edge Broadcasting*, 509 U.S. 418, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993), however, this court will not discuss whether the TCPA would be constitutional as a content-based speech restriction.

167. *Florida Bar,* 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995).

168. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

169. *Florida Bar,* 515 U.S. at 623, 115 S.Ct. 2371.

170. *Id.*

171. *Central Hudson,* 447 U.S. at 561, 100 S.Ct. 2343.

172. *Id.* at 566, 100 S.Ct. 2343.

the TCPA was enacted and are not substantial today. Defendants further maintain that Congress was not primarily concerned with unwanted faxes, but unwanted telephone solicitations, during the hearings preceding the TCPA's enactment. Finally, Defendants argue that the costs associated with unwanted faxes are minimal, and the harms cited by the government are not real.

On the other hand, the government asserts that it has a substantial interest in eliminating the practice of shifting advertising costs to non-consenting fax recipients and minimizing business interruptions caused by unwanted faxes. The government asserts that Congress was concerned that unsolicited fax advertisements shift the costs of paper and toner for fax machines from the advertisers to the fax recipients.[173] The government also references Congressional findings that businesses are harmed by the interruptions that unsolicited faxes cause.[174] A witness at the congressional hearings in 1991 stated that most fax machines cannot send or receive faxes during a fax transmission.[175] Therefore, Congress concluded that dealing with unsolicited faxes is time consuming and prohibits businesses from engaging in legitimate business communication.[176]

Plaintiffs agree with the government's argument that Congress enacted the TCPA to prevent real harms caused by unsolicited commercial faxes. Supporting this argument, Plaintiffs posit that sending a fax costs the recipient some quantity of time and money no matter what the cost to receive a fax or how long a fax machine's operation may be interrupted.[177] Concluding, Plaintiffs advise that a number of courts have examined the Congressional findings relating to the TCPA, and each has found the government's interests substantial.[178]

The Supreme Court has been willing to accept anecdotes along with studies, history, and simple common sense to allow the government to establish that its interests are substantial.[179] Significantly, the government presented the same substantial interests in *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.* In that case, fax broadcasters argued that the interests presented by the government were insufficient because the government failed to produce empirical data to support its conclusions. However, the Eighth Circuit advised that empirical data is not required to prove a substantial interest.[180] Noting the congressional hearings held in 1989, the *Missouri* court

---

**173.** U.S. Mem. in Opp. to Mot. to Dismiss, p. 19.

**174.** *Id.* at 21 (citing H.R. Rep. No. 102–317, at 25 (1991)).

**175.** *Id.* at 22 (citing *Hearing on S. 1462 Before the Subcomm. on Communications of the Senate Comm. on Commerce, Sci., and Transp.,* 102d Cong., 41 (1991)).

**176.** *Id.* at p. 21 (citing *Hearing on H.R. 1304 and 1305 Before the Subcomm. on Telecomm. and Fin. of the House Comm. on Commerce, Sci., and Trasp.,* 102d Cong., 31 (1991)).

**177.** Pls.' Mem. in Opp. to Mot. to Dismiss, p. 55.

**178.** *Id.* (citing *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,* 323 F.3d 649 (8th Cir.2003), cert. denied, *Fax.com, Inc. v. Missouri ex. rel. Nixon,* —— U.S. ——, 124 S.Ct. 1043, 157 L.Ed.2d 888 (2004); *Texas v. Am. Blast Fax, Inc.,* 159 F.Supp.2d 936 (W.D.Tex.2001); *Destination Ventures, Ltd. v. FCC,* 46 F.3d 54 (9th Cir.1995); *Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162 (S.D.Ind.1997)).

**179.** *See id.*

**180.** *Id.* at 656 (citing *Florida Bar,* 515 U.S. at 628, 115 S.Ct. 2371).

found that one fax advertiser has the ability to send 60,000 fax advertisements per week.[181] Moreover, even as late as 2001, courts have found that the majority of faxes are printed on paper, and those that are sent directly to e-mail systems burden business's computer networks.[182] The Eighth Circuit concluded that unsolicited fax advertisements continue to cause significant costs and interference to fax recipients.[183] This court finds the Eighth Circuit's reasoning persuasive and agrees that the interests asserted by the government are substantial.

After finding the government has a substantial interest, the court must determine whether the regulation directly and materially advances that interest.[184] Plaintiffs and the government bear the burden of proving the regulation directly advances the government's interest.[185] This burden is not met by "mere speculation or conjecture"; rather, the government must show that the harms are real and the regulation serves as a means to substantially alleviate such harms.[186] Finally, in answering the final question in the *Central Hudson* analysis, the court must "examine the relationship between the [government's] interests and the means chosen to serve them." [187]

Defendants suggest that the TCPA does not directly advance the government's interest because unsolicited noncommercial faxes and commercial faxes from non-profit entities are not restricted. Defendants further argue that Congress could only have achieved its stated interest by prohibiting all unsolicited faxes because the costs associated with them are the same whether the faxes are from "for-profit" or nonprofit entities, and whether they contain advertisements or political campaign messages. Defendants argue that these exemptions make the TCPA ineffective in achieving the government's goals.

Defendants compare the TCPA with the city ordinance analyzed by the Supreme Court in *City of Cincinnati v. Discovery Network, Inc.* The Cincinnati ordinance banned from public property news racks containing commercial handbills, yet allowed news racks containing non-commercial newspapers.[188] The Supreme Court affirmed the Sixth Circuit's conclusion that the ordinance violated the First Amendment because it failed the final prong of *Central Hudson.*[189] The *Discovery Network* court noted that Cincinnati's distinction between commercial and noncommercial speech bore "no relationship *whatsoever*" to the city's interest in safety and esthetics, especially since the commercial news racks represented only a small percentage of news racks on city streets.[190]

---

181. *Id.* (citing *Telemarketing Practices: Hearing on H.R. 628, H.R. 2131, and H.R. 2184 Before the Subcomm. on Telecomm. and Fin. of the House Comm. on Energy and Commerce,* 101st Cong. 2–3 (1989)).

182. *Id.* (citing *Destination Ventures, Ltd.,* 46 F.3d at 56).

183. *Id.* at 655, 115 S.Ct. 2371.

184. *Florida Bar,* 515 U.S. at 624, 115 S.Ct. 2371.

185. *Kenro, Inc.,* 962 F.Supp. at 1168.

186. *Florida Bar,* 515 U.S. at 626, 115 S.Ct. 2371.

187. *Florida Bar,* 515 U.S. at 632, 115 S.Ct. 2371 (citing *Board of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)).

188. *See* 507 U.S. 410, 414, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993).

189. *Id.* at 417–19, 113 S.Ct. 1505.

190. *Id.* at 424, 113 S.Ct. 1505.

*Discovery Network* is clearly distinguishable from this case. Unlike the regulation in *Discovery Network*, the TCPA's distinction between non-commercial and commercial speech is directly related to Congress's interest in protecting fax machine owners from the cost-shifting and the interruptions caused by commercial advertisements. When Congress enacted the TCPA, it had found that consumers consider noncommercial telephone calls less intrusive because they are more expected.[191] As the Eighth Circuit noted, "[T]here is no reason to doubt that Congress also believed for the same reason that noncommercial faxes did not present the same problem as commercial faxes." [192] Moreover, unlike in *Discovery Network*, where the commercial news racks represented only a small fraction of the news racks on Cincinnati streets, commercial advertisements make up a large proportion of all unsolicited faxes. In fact, it was the explosive growth in "junk faxes" which prompted Congress to distinguish commercial and non-commercial speech.[193] Therefore, the fit between Congress's asserted goals and the TCPA's means is clearly reasonable.

Defendants argue that the TCPA's restrictions are "more extensive than necessary." They compare it to the regulation the Supreme Court considered in *Martin v. City of Struthers*, which completely barred the door-to-door distribution of any type of information.[194] The Supreme Court invalidated the regulation because door-to-door solicitation was prohibited regardless of whether the advertisers ob-

tained consent from the homeowners.[195] Defendants argue that the TCPA is analogous to the provision in *Martin* because the TCPA prohibits advertisers from disseminating information to consumers regardless of whether the consumers want the information. Defendants conclude that the TCPA violates the rights of the fax machine owners who are willing to accept unsolicited fax advertisements and the commercial advertisers who are willing to distribute the information.

Next, Defendants contend that Congress could have achieved its goal by less restrictive means such as "do-not-fax" lists on a company, state or nation-wide scale; page limits; and restrictions on the hours in which advertisers may fax unsolicited advertisements. They also suggest that a fax machine owner should be able to sue only after receiving a second fax from a company within a 12–month period after the individual has requested no further faxes.

Combating Defendants' arguments, the government and Plaintiffs assert that the TCPA only has a limited effect on a commercial advertiser's ability to distribute information; fax advertisements are not completely prohibited. They indicate that unlike the regulation in *Martin*, the TCPA allows an advertiser to send unsolicited fax advertisements to a consumer who provides prior consent. At the same time, the TCPA does not prohibit contact with consumers through other means such as direct mail. The government insists that the TCPA's ban on unsolicited fax advertisements is not more extensive than necessary to achieve the government's interest

191. *See Missouri*, 323 F.3d at 655 (citing H.R.Rep. No. 102–317, at 16 (1991)).

192. *Id.* at 655–56.

193. *U.S. Mem. in Opp. to Mot. to Dismiss, p. 25 (citing Report to Accompany H.R.Rep. No. 102–317, at 10 (1991)).*

194. *See* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).

195. *Id.*

in eliminating the practice of shifting advertising costs to recipients without consent.

Responding to Defendants' argument that there are less intrusive alternatives, the government states that the existence of some possible alternatives does not mean there is an unreasonable fit. For example, the government contends that the do-not-fax lists are similar to the opt-out alternative in that both require fax recipients to perform an affirmative act of placing their fax numbers on a list or calling the respective companies before cost-shifting associated with unsolicited fax advertisements is eliminated. Also, the government argues that these alternatives place the burden of proof on potential plaintiffs to establish that they registered for the lists or contacted the fax senders. Moreover, the government argues that the suggestion that fax machine owners may bring actions only after receiving a second fax permits continued advertisement cost-shifting and places additional burdens on fax recipients to contact each fax advertiser who sends an unsolicited fax advertisement.

Congress is not required to develop a perfect solution before instituting measures to incrementally correct a problem.[196] The Supreme Court does not require the government's regulation of commercial speech to be the least restrictive.[197] Rather, the standard is that a regulation for commercial speech must be reasonable and in proportion to the government's interest.[198] While the TCPA may deny some individuals the opportunity to receive advertisements they might want, it provides important protection for individuals who do not welcome the costs and interference of unsolicited promotions.[199] Moreover, unlike the ordinance in *Martin*, the TCPA neither completely bans fax advertisements nor does it prohibit marketers from contacting consumers through other means.[200] Considering Congress's significant interest in eliminating cost-shifting and fax machine interferences, coupled with the number of alternatives open to marketers, this court finds that the TCPA is not more extensive than necessary to achieve its desired goal.

In applying the *Central Hudson* analysis, this court has determined that the TCPA regulates commercial speech that concerns lawful activity and is not misleading. The government's interest in protecting consumers from the costs and interruptions associated with unsolicited fax advertisements is substantial, and the TCPA directly and materially advances that interest. Finding that the TCPA is not more extensive than necessary, this court holds that the TCPA passes constitutional muster under *Central Hudson*.

Buried within Defendants' analysis of the *Central Hudson* factors is an argument that the TCPA violates the Equal Protection clause as impermissible viewpoint discrimination.[201] Defendants maintain that the selective enforcement of the

---

**196.** *See Destination Ventures, Ltd.*, 46 F.3d at 56.

**197.** *E.g., Florida Bar*, 515 U.S. at 632, 115 S.Ct. 2371.

**198.** *Missouri*, 323 F.3d at 659 (citing *Fox*, 492 U.S. at 480, 109 S.Ct. 3028). For this reason, the Supreme Court's use of the "least restrictive alternative" test, used recently in *Ashcroft* *v. Am. Civil Liberties Union*, —— U.S. ——, ——, 124 S.Ct. 2783, 2791, 159 L.Ed.2d 690 (2004) for regulations on fully-protected speech simply does not apply.

**199.** *Id.*

**200.** *Id.*

**201.** Mem. in Supp. of Mot. to Dismiss, p. 38.

TCPA for "for-profit entities" violates the Constitution on equal protection grounds.[202] Defendants' argument is based on the fact that the Federal Communications Commission has exempted non-profit organizations from the TCPA's ban on telephone solicitation.[203] Without citing any authority, Defendants assume that the FCC has likewise exempted non-profit organizations from the provision of the TCPA banning unsolicited commercial facsimiles. Because this court can find no support for Defendants' contention, this court will not analyze whether this purported interpretation or regulation is constitutionally sound.[204]

### Conclusion

In sum, this court refuses to consider Defendants' equal protection challenge regarding a purely hypothetical agency interpretation of the prohibited facsimile portion of the TCPA. This court also does not reach the merits of Kappa and Kable's supplemental memoranda because they raise issues specific to Kappa and Kable. Kappa and Kable's memoranda are considered withdrawn without prejudice.

This court holds that Plaintiffs have a private right of action under the TCPA; Plaintiffs may bring such an action under the TCPA or the UTMA on behalf of a class if Plaintiffs satisfy the requirements of Fed.R.Civ.P. 23. Moreover, the civil

damages provisions of the TCPA and the UTMA do not violate due process. Additionally, the TCPA's regulation of commercial speech does not violate the First Amendment. Furthermore, the TCPA and the UTMA do not unconstitutionally impose strict liability for their civil damages provisions. Finally, the constitutionality of the UTMA's criminal penalty provision is not properly before the court at this time.

Accordingly, IT IS ORDERED that the Motion to Dismiss filed by Defendants (doc. 150) is HEREBY DENIED.

202. *Id.* Incidentally, Plaintiffs have interpreted Defendants' equal protection challenge as being based on the TCPA's distinction between commercial and non-commercial speech. *See* Pl's Mem. in Opp. at p. 58. However, Defendants' brief clearly states, "... [T]he TCPA discriminates *among* commercial messages based on the content of the message." Mem. in Supp. of Mot. to Dismiss, p. 39 (emphasis added).

203. *Id.* at p. 36 (citing Rules and Regulations Implementing the TCPA of 1991, CG Docket No. 02–278, ¶ 93 (July 25, 2003)). Defen-

dants also maintain that "the TCPA bans unsolicited facsimile advertising, but permits unsolicited telephone advertising." Mem. in Supp. of Mot. to Dismiss, p. 38. Considering that § 227(b)(1)(B) prohibits unsolicited telephone advertising, this court considers this argument frivolous.

204. *See Washington Legal Foundation v. Henney,* 202 F.3d 331, 336 (D.C.Cir.2000) (stating, "[W]e do not think it at all appropriate to rule on the constitutionality of a hypothetical interpretation of a statute.").